IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SHAVONNE BEAGLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-19-315-JFH-SPS |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

The claimant Shavonne Beagles requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted].  The term "substantial evidence" requires "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities.  *Id*. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work.  The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC.  Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was twenty-nine years old at the time of the administrative hearing (Tr. 36, 155). She completed her GED and has worked as a cashier (Tr. 30, 174). The claimant alleges she has been unable to work since her application date of February 22, 2017, due to her left foot having a metal plate with eight screws, back problems, arthritis, and depression (Tr. 175).

## Procedural History

On February 22, 2017, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ J. Leland Bentley conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated September 5, 2018 (Tr. 21-31). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except that she was unable to operate foot controls, and would require a sit/stand option defined as a brief positional change in position every twenty minutes and without leaving the workstation so as not to diminish pace or production. Additionally, the ALJ determined that the claimant was able to understand, remember, and

apply simple and detailed instructions and concentrate and persist for extended periods in order to complete simple and detailed work tasks with routine supervision, and respond appropriately and adapt to a routine work setting, as well as maintain superficial work relationships with coworkers and supervisors, but that she should avoid work-related contact with the general public (Tr. 26). The ALJ thus concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *e. g.*, electrical accessory assembler, small product assembler, and inspector/hand packager (Tr. 30-31).

**Review**

The claimant's sole contention of error is that the ALJ failed to properly assess her subjective complaints. The undersigned Magistrate Judge finds this contention unpersuasive for the reasons set forth below.

The ALJ determined that the claimant had the severe impairments of diabetes mellitus with neuropathy, obesity, hypertension, depressive disorder, anxiety, and PTSD (Tr. 23). The relevant medical evidence reveals that she received mental health treatment in 2015 and 2016 through the Choctaw Nation for her PTSD, mood disorder, and anxiety (Tr. 262-316). The claimant's treatment largely centered on anxiety and panic attacks that appeared to worsen when her home life experienced added stressors, although she responded well to medication adjustments to help with reported auditory hallucinations (Tr. 262-316, 409). She returned for treatment on April 19, 2017, and notes reflect the claimant's physical impairments affected her mental health (Tr. 341). She reported continuing but improving symptoms of lack of sleep, anxiety, and irritability (Tr. 412).

In January 2017, the claimant's hypertension was under control but her diabetes was not, and she needed a cardiologist consult for tachycardia (Tr. 323). On August 1, 2017, her treating physician noted that reported leg pain may be related to her uncontrolled diabetes (Tr. 369, 396).

State reviewing physicians reviewed the record and initially determined that the claimant could perform light work, but was limited to only occasional balancing, stooping, kneeling, crouching, and crawling (Tr. 79-80). Upon reconsideration, Dr. Dorothy Leong, M.D. found that the claimant could perform an unlimited range of light work (Tr. 93-94). Additionally, state reviewing physicians assessed the claimant's mental impairment, completed a mental RFC assessment, and found she could understand, remember, and perform simple and some detailed tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a routine work situation, but that she could not relate to the general public (Tr. 81-83, 94-96).

At the administrative hearing, the claimant testified that she has a hard time being around people other than a few close family members, is less comfortable around men, and tends to have panic attacks (Tr. 41-42). She further testified that she has nerve damage in her feet and legs, which causes pain and difficulty walking, and that she gets sick and dizzy performing housework and other tasks (Tr. 43-44). When asked about driving, she testified that she does not have a driver's license because she has panic attacks behind the wheel and that she often waits in the car in the parking lot at Wal-Mart because of the crowds (Tr. 45-46). Finally, she stated that her aunt was "really into hobbies" and that she would make jewelry with the aunt to spend time with her, and that she likes to read books (Tr. 48).

In his written opinion at step four, the ALJ summarized the claimant's hearing testimony as well as the medical evidence in the record. As to the claimant's subjective statements, the ALJ found that the claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 27). In support of this statement, he noted a two- and a half-year treatment gap in seeking treatment for her impairments, that her diabetes began improving in January 2017 when her medications were restarted, and that she healed with no infection or complications following removal of her great left toe in May 2017 (Tr. 27). He also noted that while her diabetes was not perfectly controlled and she did have some neuropathy, she responded well to treatment and had no gait abnormalities (Tr. 28). Furthermore, he noted that she had no impaired gait, good range of motion in all major joints, and good extremity strength despite her obesity (Tr. 28). As to her mental impairments, he recognized ongoing symptoms and exacerbations related to family situations but improvement upon medication management and therapy involving neurofeedback (Tr. 28). Noting her daily activities, the ALJ found that she performed her own personal care, made appointments, cared for a cat and two dogs, kept her own room clean, and did her own laundry, as well as enjoyed television, reading, and coloring (Tr. 29). Additionally, he found she had a good rapport with her medical providers, and that she had engaged in handling money to pay bills and make change for simple transactions, as well as activities such as watching television and reading, which indicated a good level of concentration (Tr. 29) He found all these things

contradictory to her report of a limited lifestyle (Tr. 29). He then assigned substantial weight to the opinions of the state reviewing physicians as to her physical impairments but found little objective support for the postural limitations because they were inconsistent with normal findings in the record (Tr. 29). He did, however, adopt the sit/stand requirement based on the claimant's neuropathy and fluctuations in her blood sugars and blood pressure (Tr. 29). He likewise assigned substantial weight to the opinions of state reviewing physicians as to her mental impairments, noting they were consistent with the evidence including, *inter alia*, her anxiety, lack of coping skills, panic attacks in public, and PTSD symptoms (Tr. 29). Ultimately, he determined that the claimant was not disabled.

The claimant contends that the ALJ erred in assessing her subjective statements, asserting the ALJ improperly relied on her activities of daily living to find her subjective statements inconsistent. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[2] Tenth Circuit precedent is in accord with the Commissioner's regulations but characterizes the evaluation

---

[2] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated

as a three-part test. *See e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012), citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).³ As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]"

---

the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

³ Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-594 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-546 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). This Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

*Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

The ALJ's written opinion is summarized above, and the undersigned Magistrate Judge notes that the ALJ concluded that "the claimant's statements concerning the intensity, persistence, and limiting effects are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 27). In making such conclusion, the ALJ noted inconsistencies between the claimant's subjective statements and the evidence of record, including: (i) the relatively normal findings upon examination including gait, range of motion, and strength; (ii) the two- and a half-year gap in treatment; (iii) the connection of her mental impairments to family stressors; (iv) and her daily activities (Tr. 26-30). The claimant appears to solely challenge the ALJ's subjective statement findings with regard to her daily activities, contending that she testified that her pain and panic attacks interfere with her daily life, and that while she has good hygiene on days she goes to the doctor, it is not consistent when she is at home. Furthermore, she asserts that she attempts to care for her pets but has to be reminded to wash their bowls and needs help changing the litter box, and sometime needs reminders to eat and take her medications.

While it is true that "sporadic performance [of activities of daily living] does not establish that a person is capable of engaging in substantial gainful activity," *Frey v. Bowen*, 816 F.2d 508, 516-517 (10th Cir. 1987), the claimant's daily activities were not the sole basis for assessing her subjective statements, as the undersigned Magistrate Judge detailed above. Indeed, the ALJ limited the claimant to performing only simple and some detailed tasks with routine supervision, relating to supervisors and peers, but not relating

to the general public, which was the assessment of the two state reviewing physicians, *because* he accounted for her combination of impairments, *including* her anxiety, depression, PTSD, and panic attacks (Tr. 29). And he did so after accounting for the evidence in the record, including but not limited to her daily activities. Thus, the ALJ linked his subjective statement analysis to the evidence and provided specific reasons for the determination. Although perhaps a sparse opinion, the ALJ here sufficiently linked his subjective statement analysis to the evidence and provided specific reasons for the determination. There is no indication that the ALJ misread the claimant's medical evidence taken as a whole, and his evaluation of the claimant's subjective statements is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

"The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946. The essence of the claimant's appeal is that the Court should reweigh the evidence and reach a different result, which the undersigned Magistrate Judge simply may not do. *See, e. g., Casias*, 933 F.2d at 800. Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that

the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 23rd day of February, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**